IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DARRELL HALE, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  3:12CV584-TFM |
| ) | |
| CITY OF LANETT, ALABAMA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Former police officers Darrell Hale ("Hale"), Tseyonka Davidson ("Davidson"), and Nathan White ("White") (collectively referred as "Plaintiffs" or "Officers"), filed this action in state court, alleging a state law claim of wrongful termination against the City of Lanett, Alabama ("Defendant" or "City of Lanett").  In addition, Plaintiffs contend that their federal and state due process rights were violated.

The City of Lanett timely removed the action to this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. ALA. L.R. 73.1.

Now pending before the court is the Motion for Summary Judgment filed by the City

of Lanett. (Doc. # 28.) The court has carefully reviewed the Motion for Summary Judgment, the briefs filed in support of and in opposition to the Motion, and the supporting evidentiary materials and concludes that the Motion is due to be GRANTED as to the federal due process claims and that the state law claims are due to be REMANDED to the state court.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the plaintiffs' properly supported motion for summary judgment, the defendant is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.*

3

at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (quoting *Anderson*, *supra*). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that

factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

## III.  FACTS[1]

This case is more than about broken jars of pickles, smashed pastries, and an unruly customer in the produce section of the Piggly Wiggly in a small southern town; it is about the destroyed careers of three experienced police officers.  While on duty on the evening of March 23, 2010, Plaintiffs received a call about a customer behaving erratically in the produce section of the Piggly Wiggly. (Pl's Comp., p. 1; Def's Ex. DD.)  The officers found Antonio Scott ("Scott") hiding behind a display of pickle jars.  (Davidson's Dep., p. 39.) Both Officers Davidson and White asked Scott to leave the store.  (*Id*.; White's Dep., p. 23.) When Scott refused to do so, Officer Davidson told Officer White that they needed to "10-15", *i.e*. arrest, the customer. (Davidson's Dep., p. 16.)

During the officers' attempt to arrest, Scott destroyed two dill pickle jars, one package of vanilla cream horns, and one package of cruller doughnuts.  (Defs' Ex. KK.) While attempting to handcuff Scott in the store and put him into an ambulance, Officers Davidson, White, and/or Hale deployed their tasers numerous times.  (Defs' Exhs. A, P, R, FF, GG, & XX.) Scott was subsequently charged with public intoxication, resisting arrest, third-degree criminal mischief, and physical harassment.  (Def's Ex. JJ.)

Shortly after the incident, the officers completed an Alabama Uniform Incident/Offense Arrest Report.  (Def's Ex. KK.)  Officer White also completed a Use of

---

[1] Viewed in the light most favorable to Hale, Davidson, and White and drawing all reasonable inferences in their favor, the following facts are treated as undisputed for the purpose of summary judgment.

Force Report and a Taser Use Report, which were provided to Lieutenant Johnny Wood and the Interim Chief of Police Tifton Dobbs ("Major Dobbs"). (Def's Ex. LL, MM; White's Dep., pp. 53-54.) No disciplinary action was taken against the defendants at that time.

In an investigation report submitted to Chief of Police Ronnie Dollar ("Chief Dollar") in December 2010, Major Dobbs reported that he did not become fully aware of the taser incident until November 3, 2010, when an insurance adjuster called about an unrelated claim involving the use of a taser filed against the police department. (Def's Ex. PP.) After learning of the Scott incident, Chief Dollar directed Major Dobbs to conduct an investigation. (*Id.*) Upon watching videos of the incident, Major Dobbs counted twenty-three exposures prior to the time Scott was placed in the ambulance, six exposures in the ambulance, and one exposure at the hospital. (*Id.*) Major Dobbs found no justification for seven of the taser exposures. (*Id.*)

In his report, Major Dobbs also considered witness statements, including an interview in which City of Lanett Fire Department Chief Johnny Allen recalled that Scott was "violent, belligerent, and wouldn't obey the officers" and that he "felt there was a risk of danger because of the behavior of the suspect, and his feet [were] not fully restrained." (*Id.*) Major Dobbs also considered the interview of another fireman, Andy Gray, in which he stated that Scott attempted to kick him and another officer while being placed on the stretcher and continued to fight, move his head, kick his legs, and make threatening comments while on

the stretcher. (*Id.*) He also noted that store employees indicated that "Mr. Scott was out of control and needed tasing" and that an emergency room technician stated that "Mr. Scott was out of his mind and was out of control and stated that Officer Davidson was nice to Mr. Scott." (*Id.*) After considering all of the evidence, including videos of the incident, Major Dobbs found that the charges of violating Sections 1.586.8 and 1.500.01 of the Lanett Police Department Standard Operating Procedure, specifically the failure to follow the Police Department Taser Policy and the use of unnecessary force, should be sustained. (*Id.*)

On December 30, 2010, Plaintiffs were served with a Notification of Disciplinary Hearing signed by Acting City Manager Deborah Daniel. (Def's Ex. QQ.) The notice stated that a hearing was set for January 10, 2010 before the City Manager and that disciplinary action was sought on the grounds that they violated Sections 1.586.8 and 1.500.01. (*Id.*) Shortly before the scheduled hearing, Plaintiffs hired counsel to represent them. A hearing before Ms. Daniel, however, did not occur. Instead, Chief Dollar met with Plaintiffs about the incident.

On January 12, 2011, Chief Dollar sent a letter to each of the plaintiffs, stating that the evidence at the hearing was "overwhelming" that each plaintiff had violated the Police Department Taser Policy and the Use of Force Policy, that they were terminated from their employment as of January 10, 2011, and that they were being placed on administrative

leave.[2]  (Def's Ex. SS.)

On January 20, 2011, the City Attorney sent a letter to Plaintiffs' counsel advising that disciplinary action was recommended against Plaintiffs and that a full due process hearing would be held on February 9, 2011.  (Def's Ex. UU.)  The letter also provided a list of charges against each Plaintiff along with supporting facts and a citation to each alleged policy violation.  (*Id.*)  The City Attorney also specified:

- Your clients (and each of them) will have the opportunity to fairly refute the charges against them (or any of them)

- The hearing will be held before Acting City Manager Deborah Daniel

- Your clients (and each of them) will have the opportunity to present evidence, produce witnesses, and to cross-examine witnesses for the City

- Your clients (and each of them) will have the right to have the proceedings transcribed at your clients' (or any of their) expense

- Your clients (and each of them) have the right to be represented by legal counsel

- At the hearing, your clients (and each of them) will be requested to inform the City of any complained of wrongdoing with respect to either the substance of the matter or the procedures used by the City

---

[2] Despite the wording of the letter, the parties do not dispute that the meeting between Chief Dollar and Plaintiffs was not a hearing that comports with due process and that the officers were placed on administrative leave and not terminated from their employment at that time. (Def's Brief in Support of the Motion for Summary Judgment, p. 35.)

- The City expects to call as witnesses Police Chief Ronnie Dollar, Major Tifton Dobbs, and LaGrange, Georgia Police Chief Louis Dekmar. The City reserves the right to call additional witnesses and the right to cross examine witnesses produced by your clients (or any of them). Please provide me with a list of witnesses expected to be called by your clients (or any of them). The City will provide you with copies of all visual and documentary evidence expected to be introduced by the City upon the receipt of releases signed by your clients (since the matters are personnel related).

- If there is additional information you need to prepare for the hearing(s) or procedures necessary to protect your clients' (or any of their) due process rights, please let me know immediately.

(Id.) The City Attorney also advised that Plaintiffs had the right to appeal an unsatisfactory determination before a hearing officer not affiliated or employed by Defendant in accordance with Section 8.02 of the City of Lanett Personnel Policy. (Id.)

On February 9, 2011, a hearing before Ms. Daniel was conducted. (Ex. XX.) At the beginning of the hearing, the City Attorney read parts of his January 20, 2011 letter to Plaintiffs' counsel into the record, including a reminder that Plaintiffs were "requested to inform the City of any complained of wrongdoing with respect to either the substance of the matter or the procedures used by the City" and "to let [him] know immediately" of any additional information needed to prepare for the hearing or procedures necessary to protect Plaintiffs' due process rights. (Ex. XX, Transcript, pp. 7-8.) The City Attorney also stated:

> [W]e cannot, we, being the City, in an effort to be fair to the employees, it would not be fair to have this due process hearing in front of the City Manager

> and then an appeal in front of the same person who is going to make this decision. Obviously, I talked to [Plaintiffs' counsel] about that. If and when his clients have an adverse determination and if, in fact, they choose to appeal, that is the reason for that discrepancy, so as to give them an effort not to have to hear an appeal in front of the same person who made a particular factual determination.

(*Id*., p. 9.) The City produced two witnesses, Chief Dollar and Chief Dekmar, and entered twelve exhibits. (*Id*., pp. 10-78.) Each of the plaintiffs testified and produced exhibits. (*Id*., pp. 79-124.)

On February 10, 2011, Ms. Daniel sent letters to Plaintiffs notifying them that their employment with the City was terminated. (Def's Exhs. ZZ-BBB.) Each letter provided that their terminations were effective immediately. (*Id*.) The three letters were substantively identical except for Hale's letter which provides that he was terminated "as a result of previous disciplinary offenses introduced at the hearing" as well as the incident with Mr. Scott. (*Id*.) In addition, the letter provided that Plaintiffs were entitled to request a review of Ms. Daniel's determination before "a hearing officer not affiliated with or employed by the City of Lanett since the City Manager acted as the hearing officer at the due process hearing." (*Id*.) In a separate letter, Ms. Daniels also informed the officers that their pay would terminate effective February 18, 2011. (Def's Exh. CCC.)

On February 18, 2011, Plaintiffs' counsel requested a written review of Ms. Daniels' determination. (Def's Exh. DDD.) In a letter dated February 23, 2011, the City Attorney set forth the process for the review of Ms. Daniels' decision as follows:

- Each Plaintiff receives thirty minutes to present his case, including witnesses

- The City receives thirty minutes to present its case

- The presentations are limited to "those matters for which [the Plaintiffs] were disciplined. . . ."

(Def's Ex. EEE.)

On March 18, 2011, Supernumerary District Attorney Rea Clark, the hearing review officer, conducted a review. (Def's Ex. HHH.) Following the hearing and a review of the evidence, Mr. Clark upheld the termination of the officers. (*Id.*) The Plaintiffs filed a lawsuit in the Circuit Court of Chambers County on June 6, 2012. (Pls' Comp., p. 1.) The case was subsequently removed to this court on July 6, 2012. (Doc. No. 1.)

## IV. DISCUSSION

### A. The Federal Procedural Due Process Claim

Plaintiffs contend that the City of Lanett deprived them of their procedural due process rights by violating their own policies. Specifically, they assert that the Chief of Police does not have the authority to terminate employees. In addition, they assert that the City terminated them without affording them an appeal before the City Manager, the Mayor, and/or the City Council. Officer Hale also contends that he did not receive proper notice of all of the charges against him. The City asserts that Plaintiffs were provided sufficient due process because they were afforded a hearing before the Acting City Manager and an appeal

of her decision to an impartial decisionmaker.  In addition, they argue that the State of Alabama provides an adequate remedy for any deprivations of due process.

Due process requires that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  To establish a due process claim, a plaintiff must demonstrate:  (1) that he was deprived of a property interest; and (2) that he did not receive sufficient process regarding that deprivation. *Ross v. Clayton County Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).  For purposes of the Motion for Summary Judgment, the City of Lanett concedes that Plaintiffs have a constitutionally protected property interest in their employment as police officers.  (Doc. No. 29, Defs' Br., p. 45.)

The essential requirements of due process are notice and an opportunity to respond. *Cleveland Bd. of Educ.*, 470 U.S. at 546.  The opportunity to present reasons why a proposed action should not be taken is a fundamental due process requirement.  *Id.*  Thus, the principle of due process requires "'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  *Id.*, at 542.  The hearing "should be an initial check against mistaken decisions – essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Id.*

In this case, Plaintiffs were provided written notice of the reasons for their termination. In addition, they were afforded a full hearing prior to their termination.[3] During the hearing before the Acting City Manager, Plaintiffs' counsel presented evidence and cross-examined the City's witnesses and Plaintiffs gave testimony regarding their version of the facts. (Defs' Ex. XX.) After the hearing, Plaintiffs were provided with Ms. Daniels' reasons for her decision to terminate the officers. Plaintiffs argue that they were not permitted an appeal to the City Manager because the City Manager conducted the due process hearing.[4] Nonetheless, the Plantiffs were allowed to appeal the decision to a hearing

---

[3] The notice does not indicate that Plaintiff Hale received notice that prior disciplinary charges would also be considered against him; it does, however, indicate that he was charged with violating the Taser Use Policy and the Use of Force Policy.

[4] The City of Lanett argues that Plaintiffs waived their argument regarding the authority of the Acting City Manager to conduct the hearing because they failed to object. Despite the City Attorney requesting that Plaintiffs' counsel object to any procedures used by the City both before and during the due process hearing, Plaintiffs' counsel did not object to Ms. Daniels as the hearing officer. Plaintiffs, however, argue that Defendant waived its waiver argument by failing to plead the affirmative defense of waiver in its Answer as required by FED.R.CIV.P. 8(c). It is well-settled law that a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff. *See Edwards v. Fulton County, Ga.* 509 Fed.Appx. 882, 887 (11th Cir. 2013) (citing *Proctor v. Fluor Enters., Inc.,* 494 F.3d 1337, 1350 (11th Cir.2007) (acknowledging that, in cases where federal case law has identified specific affirmative defenses, we have "examined whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice" in determining whether the defendant waived the defense); *Sweet v. Sec'y, Dep't of Corrections,* 467 F.3d 1311, 1321 n. 4 (11th Cir.2006) ("[O]ur cases interpreting [Rule 8(c) ] ... support a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff."); *Hassan v. U.S. Postal Serv.,* 842 F.2d 260, 263 (11th Cir.1988) ("[W]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue."); *Jones v. Miles,* 656 F.2d 103, 107 n. 7 (5th Cir. Unit B Aug.1981) ("Neglect to affirmatively plead [an affirmative defense] is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise.")). Because the City raised the defense in its Motion for Summary Judgment, the Plaintiffs had sufficient opportunity to respond. Thus, this court concludes that the City's failure to assert the affirmative defense of waiver in its Answer did not prejudice the Plaintiffs. Because the court concludes the State of Alabama provides an adequate remedy, the court makes no finding as to whether Plaintiffs waived their argument concerning whether Ms. Daniels had the authority to conduct the hearing or terminate Plaintiffs.

review officer. On appeal, Mr. Clark found that the decision to terminate the officers was justified. Because Plaintiffs received sufficient notice and "some kind of hearing," it is arguable that Plaintiffs were afforded all the process that was due prior to their official termination. *See Cleveland Bd. of Educ.*, *supra*.

More importantly, the State of Alabama provides an adequate post-deprivation remedy. Alabama state courts "review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *See Bell v. City of Demopolis,* 86 F.3d 191, 192 (11th Cir.1996). Thus, a sufficient state remedy is available. This court therefore concludes that summary judgment should be granted in favor of the City of Lanett on the Plaintiffs' procedural due process claim.

To the extent Plaintiffs assert that their substantive due process rights were violated, the court concludes their claims are without merit. The substantive component of the due process clause protects those rights which are "fundamental, that is, rights that are implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325 (1937).[5] To trigger protection under the substantive due process clause, the right asserted by the plaintiffs "must be so fundamental that our democratic society and its inherent freedoms would be lost

---

[5] *Palko v. Connecticut,* 302 U.S. 319, 325 (1937), was overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969). In *Benton*, the court held that the double jeopardy prohibition of the Fifth Amendment applies to the states through the Fourteenth Amendment and overruled *Palko* "insofar as it is inconsistent with this holding." 395 U.S. at 794.

if that right were to be violated." *Moates v. Strength*, 57 F. Supp. 2d 1305, 1309 (M.D. Ala. 1999) (citing *McKinney v. Pate*, 20 F.3d 1550, 1561 11th Cir. 1994)).  Traditionally, the types of interests recognized under substantive due process include rights of privacy, family and procreation – those rights that are so central to individual freedom which "neither liberty nor justice would exist if [they] were sacrificed." *Palko*, 302 U.S. at 325-326; *see also, Harrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 198 (1979) (collecting cases discussing interests traditionally accorded substantive due process protection).  State-created rights are not subject to substantive due process protection under the due process clause because "substantive due process rights are created only by the Constitution." *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1988).  In *McKinney*, the Eleventh Circuit sitting *en banc* also concluded that state-created rights are not entitled to substantive due process protection.  20 F.3d at 1556-57.

Given these authorities, the dispositive question in this case is whether Plaintiffs have a fundamental right *created under the United States Constitution* to recover for claims concerning the termination of their employment.  The court concludes that they do not.  Plaintiffs' lawsuit concerns the termination of their employment, the underlying substance of which concerns neither the right to privacy nor marital or familial interests.  Furthermore, Plaintiffs have not demonstrated why an ability to recover damages for what appears to be a relatively simple claim of wrongful termination is a fundamental right deeply rooted in

history or implicit in the concept of ordered liberty. Based on the foregoing, the court concludes that the Motions for Summary Judgment with respect to Plaintiffs' federal substantive due process claim is due to be granted.

### B. The State Law Claims

The court's exercise of supplemental jurisdiction over the remaining state law claims is discretionary. Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction . . . " The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726. In *Carnegie-Mellon University v. Cohill*, the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice . . . ." 484 U.S. 343, 350 (1988).

Under certain circumstances, the court may remand supplemental state law claims to state court. Although a remand of supplemental state law claims is not encompassed within

17

the two express provisions for remand in the removal statutes, *see* 28 U.S.C. §§ 1441(c), 1447(c), the court has inherent authority to remand the state law claims. *Cf. Snapper v. Redan*, 171 F.3d 1249, 1263 n. 26 (11th Cir. 1999) (acknowledging the district court's "inherent power to remand a removed case when appropriate to enforce a forum selection clause"), *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 354 (holding that Congressional "silence cannot sensibly be read to negate the power to remand"). The discretion to remand supplemental state law claims "'enables district courts to deal with cases involving [state law] claims in the manner that best serves the principles of economy, convenience, fairness and comity. . . .'" *Snapper, supra* (quoting *Carnegie-Mellon*, 484 U.S. at 357). "Any time a district court dismisses, rather than remands, a removed case involving [state law] claims, the parties will have to refile their papers in state court, at some expense of time and money." *Carnegie-Mellon*, 484 U.S. at 353. Furthermore, the pleadings demonstrate that the statute of limitations for filing the state law claims has expired. Therefore, a remand of the state law issues to the Chambers County Circuit Court will enable Plaintiffs, seemingly without being subject to problems such as limitations, to pursue their state law claims in state court. *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (allowing remand of state law issues to state court in order to enable appellant to avoid the statute of limitations).

The court thus declines to exercise supplemental jurisdiction over Plaintiffs' state law

claims. Upon consideration of the principles of judicial economy, convenience, fairness, and comity, the court concludes that the state law claims are due to be remanded to the Chambers County Circuit Court.

## V. CONCLUSION

Accordingly, it be and is hereby ORDERED that:

1. The Motion for Summary Judgment with respect to the federal due process claims be GRANTED in favor of the City of Lanett.

2. The federal due process claims be dismissed with prejudice.

3. The state law claims be REMANDED to the Chambers County Circuit Court.

The Clerk of the Court be and is hereby DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Chambers County.

Done this 22nd day of July, 2013.

                                          /s/Terry F. Moorer
                                    TERRY F. MOORER
                                    UNITED STATES MAGISTRATE JUDGE